[Civ. No. 60245. Second Dist., Div. Five. Apr. 13, 1981.]

WILLIAM LITTLE, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

COUNSEL

Rich & Ezer and Michael J. Ezer for Plaintiff and Appellant.

Burt Pines, City Attorney, Norman L. Roberts, Assistant City Attorney, and Patricia V. Tubert, Deputy City Attorney, for Defendant and Respondent.

OPINION

KAUS, P. J.—Plaintiff appeals from a judgment in favor of defendant City of Los Angeles (City), entered after its demurrer to plaintiff's complaint was sustained without leave to amend.

## The Complaint

The complaint alleges: In November 1978 the real property involved in this action[1] was owned by the "late Grover C. Toomes." On November 6 of that year the property was sold to plaintiff at a "Treasurer's Improvement Bond Sale."[2] A certificate of sale was issued to plaintiff on December 14, 1978. The last day on which a redemption from the sale could be effected was December 26, 1979. On December 24, 1979, the City accepted a personal check for $2,223.49 from one Frederick D. Milman in redemption of the property.[3] Milman was not an owner of the property, nor did he have an interest in it. He had, however, made an offer to purchase it from the "former" owner which offer had never been accepted.[4]

On December 27 plaintiff applied for a treasurer's deed to the property but was refused.

The complaint goes on to allege that there is a controversy between plaintiff and the City in that plaintiff contends (1) that the City was not authorized to accept Milman's personal check; and (2) that Milman was not a person authorized to redeem the property. The City takes a contrary view.

## Discussion

Preliminarily it appears to us that the question whether the City accepted the proper medium of exchange is not one which plaintiff has standing to argue. His only concern is whether the property was redeemed on or before December 26, 1979. Since, as we shall see, we must assume that the check was honored on or before that date, there was a redemption. If, before the redemption, a city official took a chance on a personal check when he should not have done so, plaintiff is not one to complain. Nevertheless, the parties have strenuously argued

---

[1] "Lot 41, Strong & Dickinson's Compton Avenue Tract, as per map recorded in Book 4, page 19, Official Records of Los Angeles County, ..."

[2] The sale proceedings were conducted pursuant to the Improvement Act of 1911. (Sts. & Hy. Code, § 5000 et seq.)

[3] The City's receipt for Milman's check, a copy of which is attached to the complaint, indicates that the check was received from "Frederick D. Milman for Cleveland G. Toomes."

[4] The former owner is presumably the "late" Grover C. Toomes. Whether Grover C. Toomes and Cleveland G. Toomes—on whose behalf Milman purported to act—are or were the same person, living or dead, is not revealed.

the question whether the City was authorized to accept Milman's personal check. We shall, therefore attempt to resolve it.

The parties agree that the question whether the City was authorized to accept Milman's personal check on the property depends on the interpretation of sections 2504 and 2505, subdivision (a) of the Revenue and Taxation Code. The latter section authorizes the City Treasurer, in his discretion, to accept "negotiable paper in payment of any tax, or assessment, or on a redemption." Section 2504 defines negotiable paper as "bank checks and drafts and express and post-office money orders."

It is plaintiff's contention that the term "bank check" as used in section 2504 denotes an instrument which, like the others listed in the section—bank drafts, express and post office money orders—constitutes an obligation on which a bank or other financial institution is primarily liable as drawer, maker or acceptor. He points out that the only other statutory instance in which the term "bank check" is used in any of the California codes, is section 4211, subdivision (1)(d) of the California Uniform Commercial Code, stating that a collecting bank may take in settlement of any item "if the item is drawn upon or payable by a person other than a bank, a cashier's check, certified check or other bank check or obligation."

■ The City, on the other hand, contends that in the context of section 2504 of the Revenue and Taxation Code, the term "bank check" is synonymous with "personal check." The City is entirely correct. Section 2504 is the lineal successor of chapter 267 of the Statutes of 1921, section 1 which read as follows: "The assessor and tax collector for any city, city and county, or county may in their discretion accept bank checks and drafts, and express and post office money orders in payment of any tax, assessment or license."

In *Cantlay & Tanzola, Inc.* v. *Ingels* (1939) 31 Cal.App.2d 553, 556 [88 P.2d 141], the court assumed as a matter of course that personal checks tendered to the Department of Motor Vehicles were bank checks within the meaning of section 1, chapter 267.[5]

---

[5] In virtually every other instance in which a court has had occasion to define the word "bank check" no distinction between checks drawn by banks and checks drawn by individuals or corporations was made. (See, for example, *Bull* v. *Bank of Kasson* (1887) 123 U.S. 105, 109 [31 L.Ed. 97, 99, 8 S.Ct. 62]; *Espy* v. *Bank of Cincinnati* (1874) 85 U.S. (18 Wall.) 604, 620 [21 L.Ed. 947, 951]; and *Merchants' Bank* v. *State Bank* (1871) 77 U.S. (10 Wall.) 604, 647 [19 L.Ed. 1008, 1019].)

This interpretation accords with almost universal practice by assessors, tax collectors and treasurers. We are, of course, not concerned with any problem which might have arisen had Milman's check not been honored within the period of redemption. We assume that it was since the complaint does not allege otherwise.

The use of the term bank check in section 4211 of the Commercial Code as meaning, apparently, the same as "banker's check"—that is to say a check drawn by an officer of a bank upon funds either in his own bank or in some other bank in which funds of his bank are deposited—is the result of the highly specialized subject matter of the chapter of which it is a part.[6]

■ Plaintiff's second argument is that Milman was not a person authorized to redeem, either in his own right or on behalf of the mysterious Cleveland G. Toomes. The point has no merit.

While it is true that under section 6530 of the Streets and Highways Code redemption may only be made "by the owner or any party in interest," the law in the cognate area of redemptions from tax sales (Rev. & Tax. Code, § 4101 et seq.) has always been that if the redemption is made by a stranger, he acts as a volunteer and the redemption redounds to the benefit of the owner. (E.g., *Potter v. County of Los Angeles* (1967) 251 Cal.App.2d 280, 288-289 [59 Cal.Rptr. 335]; *Spencer v. Harmon Enterprises, Inc.* (1965) 234 Cal.App.2d 614, 626 [44 Cal.Rptr. 683].) Plaintiff does not dispute the validity of those decisions as applied to redemptions under the 1911 act, but claims that they are inapplicable because they do not involve the interposition of a purchaser such as himself who "became the equitable owner of the property whose title was subject to divestment only by a lawful redemption." His problem, however, is that there is nothing unlawful in the type of volunteer redemption discussed in the *Potter* and *Spencer* cases. They are, therefore, quite in point and dispositive of the second issue.

The judgment is affirmed.

Ashby, J., concurred.

---

[6]For a case distinguishing between "banker's checks" and "bank checks," see *Banker of M. W. of A. v. Harrison* (Mo. 1933) 62 S.W.2d 486, 487 where the court quotes from 8 Corpus Juris page 37: "'The phrase, "banker's check" has no place in legal or financial terminology, it has been suggested; but the popular significance of the term is a check drawn by a banker, as distinguished from *a bank check which may be drawn on a bank by anybody*.'" (Italics added.)

**STEPHENS, J.**—I concur in the result. However, it is unnecessary to argue at length the meaning of "bank check." Whether the city accepted payment in a form other than that set forth in Revenue and Taxation Code section 2504 does not control the result. As stated in *Fernandez Co. v. Montoya* (1938) 42 N.M. 524 [82 P.2d 289, 290]: "The treasurer [City] was the agent of [the tax deed holder] for the collection of the taxes [citations] and in view of the facts herein, the [tax deed holder] cannot complain that the tender was not made in money and at the office of the treasurer. Knowledge of the custom of accepting money orders in payment of taxes was chargeable to [the tax deed holder], and if the treasurer had accepted the money order, payment to [the tax deed holder] of the amount due it would have been made in money if so demanded."

The purpose of the section (§ 2504) is to protect the treasurer from bad checks and the tax deed purchaser has no interest in it; his interest on a redemption is solely that he get his money back.

*Fernandez Co., supra*, cites supportive authority for its analysis from Michigan, Indiana, Iowa, Illinois, Washington, New Jersey and Pennsylvania, and we see no reason for California to hold contrary to the well-reasoned opinions of our sister states, and certainly our statute does not suggest to the contrary.